# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

**ROBERTHENRY DAVIS SR.,**
            **Plaintiff,**

    v.                                    **Case No: 08C0652**

**TIME WARNER CABLE OF
SOUTHEASTERN WISCONSIN, LP,**
            **Defendant.**

## DECISION AND ORDER

Plaintiff Roberthenry Davis Sr., an African-American, brings this employment discrimination action against defendant Time Warner Cable of Southeastern Wisconsin, LP. Although the precise nature of plaintiff's claims is sometimes unclear, plaintiff appears to allege that defendant discriminated against him based on race first by terminating his employment and then by reducing his compensation after reinstating him. Plaintiff also appears to allege claims based on a hostile work environment and retaliation. Before me now are the parties' cross-motions for summary judgment and several non-dispositive motions.

### I. FACTS

Defendant provides cable, digital telephone and high speed online services to customers throughout southeastern Wisconsin. It employs a number of business class salespersons who sell its services to Milwaukee-area businesses. Its inside sales staff takes calls from potential customers, and its outside sales staff initiates contact with and attempts to sell services to other entities. The potential customers the outside sales staff deals with are generally larger than those that contact the inside sales staff, and it takes

much more time to consummate an outside sale than an inside one. Over the years, the inside sales staff has consisted primarily but not exclusively of African-Americans, the outside sales staff of Caucasians.

Plaintiff became an inside salesperson in 2002. He asserts that in the fall of 2006, there was tension within the inside sales staff relating to the performance of Mary Schmitt, a Caucasian who apparently was less effective as a sales person than the other staff members, that the tension had some racial overtones and that he brought the matter to the attention of the director of business-class sales, Ron Cleboski. Plaintiff also alleges that Cleboski made occasional remarks related to race. In September 2006, an incident occurred which led to plaintiff's termination. The relevant facts are as follows: a member of the inside sales team, Victoria Rodgers, an African-American, answered a phone call from a customer who wanted a phone jack for internet services installed in its building in a room previously occupied by a tenant. Rodgers referred the call to a member of the sales team's support staff because she believed that the request involved only a relocation of service rather than a transfer of service. A relocation of service did not require the creation of a new contract and did not result in the salesperson receiving a commission, whereas, a transfer of service required both. A relocation involved moving a telephone jack from one wall to another within the same suite in a building, whereas, a transfer involved the movement of service to a different suite.

For some reason, the support staffer to whom Rodgers referred the request did not act on it but returned it to a queue, and plaintiff picked it up. Plaintiff treated the request as involving a transfer and wrote up a new contract. Rodgers overheard plaintiff's conversation with the customer and advised him that no new service contract was required.

2

She also mentioned the matter to Ronald Coleman, another inside salesperson and an African-American, who suggested to plaintiff that he was not handling the matter appropriately. Cheryle Parker, a sales assistant and an African-American, notified sales manager Jim Fraser of the issue, questioning whether plaintiff had correctly processed the sale as a commissionable transfer. After signing the contract, the customer called back and questioned why an additional agreement was necessary, and defendant eventually rescinded the contract. Cleboski investigated the matter and reviewed the situation with Fraser and Dan Conrad, vice-president of the business class services team. Defendant had a zero-tolerance policy for fraudulent sales activity and routinely terminated sales employees for violating company guidelines relating to customers and commissions. Cleboski and all members of the management team agreed that plaintiff had processed a non-commissionable activity as a commissionable one and that he should be terminated, and he and Fraser communicated the decision to plaintiff.

Soon after his termination, plaintiff contacted the human resources department expressing concerns about his dismissal and denying that he intentionally attempted to obtain a commission on a non-commissionable transaction. Managers in the human resources department explored the matter further. Ultimately, they concluded that plaintiff had taken a non-commissionable transaction and made it commissionable but also that the customer had given inconsistent information about whether his request was for a relocation or a transfer of service. The originally recalcitrant customer weighed in several times and ultimately supported plaintiff's version of the incident. Ultimately, Kelly Zintelman, who was defendant's vice-president of human resources, reviewed the matter and decided that it

was better that defendant err on plaintiff's side. Thus, she reinstated plaintiff. Defendant treated plaintiff's termination as a paid suspension.

Around the time plaintiff returned to work, he filed a discrimination claim with the EEOC. Around the same time, defendant developed a new compensation plan relating to the compensation of the inside and outside sales staff. With respect to the inside sales staff, the plan made compensation more dependent on volume, and as to outside sales, it made compensation more dependent on the amount of revenue generated by a sale, on the effort required to make the sale and on whether the sale would likely lead to other sales opportunities. Generally speaking, the new plan resulted in additional compensation opportunities for outside sales staff and decreased compensation for inside salespersons.

## II. SUMMARY JUDGMENT STANDARD

Summary judgment is required "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). The mere existence of some factual dispute does not defeat a summary judgment motion; the requirement is that there be no genuine issue of material fact. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). For a dispute to be genuine, the evidence must be such that a "reasonable jury could return a verdict for the nonmoving party." Id. I take the evidence and all reasonable inferences therefrom in the light most favorable to the non-moving party. Matsushita Elec. Indus. Co.. Ltd. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986). I may grant the motion only if no reasonable juror could find for the non-moving party.

4

Case 2:08-cv-00652-LA    Filed 01/20/10    Page 4 of 9    Document 81

## III. DISCUSSION

I will first address defendant's summary judgment motion because it is dispositive. Title VII prohibits discrimination based on race. 42 U.S.C. § 2000e-2(m).[1] A plaintiff can seek to prove discrimination either directly or under the indirect method established in McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802-04 (1973). Here, plaintiff relies only on the direct method. Under such method, plaintiff must show by direct or circumstantial evidence that his employer took an action that affected his employment adversely and was motivated by race. Cerutti v. BASF corp., 349 F.3d 1055, 1061 (7th Cir. 2003). In the present case, plaintiff contends that defendant discriminated against him, both by terminating his employment and by changing the compensation structure after his reinstatement.

I conclude that defendant's motion for summary judgment must be granted as to both of plaintiff's discrimination claims. Based on the evidence in the record, no reasonable juror could conclude either that defendant terminated plaintiff because of his race or that defendant changed the business class sales staff's compensation structure based on race. With respect to plaintiff's termination, there is literally no evidence that race was a motivating factor. All of the mangers of the business-class sales operation and at least three of defendant's co-workers who were African-American expressed the view that plaintiff had attempted to turn a non-commissionable transaction into a commissionable one. Although there was some tension within the inside sales staff surrounding Mary

---

[1] Plaintiff also brings a claim under 42 U.S.C. § 1981, which is analyzed under the same framework as his Title VII claim. Plaintiff also asserted an equal protection claim but subsequently withdrew it.

5

Schmitt that may have had some racial overtones, which tension Cleboski was trying to resolve, there is no evidence that this tension or Cleboski's efforts to resolve it had even a remote connection with plaintiff's termination. Rather, the evidence indicates that all of plaintiff's superiors who were consulted reasonably believed that plaintiff had committed a form of sales fraud. Moreover, it is undisputed that defendant had a zero-tolerance policy for such conduct. To prevail, it is not enough for plaintiff to show that management was mistaken about whether he attempted to turn a non-commissionable event into a commissionable one. He must show that they did not honestly believe the given reason for his termination and that they lied. Scruggs v. Garst Seed Co., 587 F.3d 832, 838-39 (7th Cir. 2009). Nothing in the record suggests this, and no reasonable jury could reach this conclusion.

  Plaintiff's claim that defendant changed the compensation structure of the inside and outside sales staff because of a racial animus also fails. The evidence indicates that defendant made the change in order to create greater financial rewards for sales that were both more difficult and more likely to generate more revenue for the company. The idea was to create incentives to better match the different tasks performed by the inside and outside sales teams. Plaintiff presents no evidence that Dan Conrad, who was the principal creator of the new plan, or any other person who was involved in it was motivated by race. Moreover, it is frankly absurd to suggest that defendant would change the compensation structure applicable to its entire sales staff because it wished to harm plaintiff because of his race. The compensation plan affected everyone on the sales team, including Schmitt, who was Caucasian.

As previously stated, plaintiff also appears to assert hostile environment and retaliation claims against defendant. However, he does not develop coherent arguments in connection with either. For the sake of completeness, I will assume that plaintiff is making such claims, and I will briefly discuss them. An employer may be liable for discrimination within the meaning of Title VII by subjecting an employee to a hostile work environment based on his race. Mason v. S. Ill. Univ. at Carbondale, 233 F.3d 1036, 1043 (7th Cir. 2000). To prevail on such a claim, plaintiff must show: 1) he was subject to unwelcome harassment; 2) the harassment was based on his race; 3) the harassment was severe and pervasive so as to alter the conditions of his environment and create a hostile or abusive working environment; and 4) there is a basis for employer liability. Id. Based on the evidence presented, no reasonable jury could find that defendant subjected plaintiff to a hostile or abusive working environment. Plaintiff claims that Cleboski made several racially tinged comments over a period of several years, but even assuming this is true, they were very infrequent, none were directed at him and none denigrated African-Americans as a class. At most, plaintiff identifies several ambiguous statements over the course of three years, none of which interfered with his work performance.

As for retaliation, Title VII forbids discrimination against an employee because an employee opposes an unlawful employment practice. 42 U.S.C. § 2000e-3a. In order to prevail on a retaliation claim, plaintiff must demonstrate that: (1) he engaged in statutorily protected activity; (2) he suffered an adverse action taken by his employer; and (3) there was a causal connection between the statutorily protected activity and the adverse action. Porter v. Erie Foods Int'l, Inc., 576 F.3d 629, 641 (7th Cir. 2009). No reasonable jury could find that defendant retaliated against plaintiff. Plaintiff first suggests that he was

7

Case 2:08-cv-00652-LA   Filed 01/20/10   Page 7 of 9   Document 81

terminated because he complained to Cleboski about the defendant's handling of the racial tension in the inside sales staff involving Mary Schmitt.  However, as previously discussed, there is no evidence that defendant terminated plaintiff for a reason other than management's honest belief that plaintiff attempted to turn a non-commissionable sales transaction into a commissionable one.  Nor is there any evidence in the record that defendant terminated plaintiff because he protested or complained about some race-based practice of defendant.  Plaintiff also suggests that defendant changed the compensation plan applicable to its business class sales force to retaliate against him for bringing a discrimination claim to the EEOC.  However, plaintiff presents no evidence supporting this assertion – there is no evidence that Dan Conrad, who designed the new compensation plan, was even aware of the complaint. Therefore, no reasonable jury could conclude that the reason that defendant gave for changing the compensation plan – namely to create an incentive system that would generate more revenue for the company – was actually a pretext for reducing plaintiff's pay because he filed an EEOC complaint.

For the foregoing reasons, defendant's motion for summary judgment on plaintiff's discrimination claims will be granted.  Accordingly, plaintiff's motion for summary judgment will be denied.  In addition, plaintiff's motion to compel and defendant's motions to strike will be denied as moot.

Therefore,

**IT IS ORDERED** that defendant's motion for summary judgment is **GRANTED.**

**IT IS ORDERED** that plaintiff's motion for summary judgment is **DENIED.**

**IT IS ORDERED** that plaintiff's motion to strike is **DENIED** (Docket #78).

**IT IS ORDERED** that plaintiff's motion to compel (Docket #26) and Defendant's motions to strike (Docket #64 and 71) are **DENIED AS MOOT**.

**FINALLY, IT IS ORDERED** that this case is **DISMISSED**.

Dated at Milwaukee, Wisconsin this 20 day of January, 2010.

/s_____
LYNN ADELMAN
District Judge